UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| | |
|---|---|
| **KENNETH HAROLD MUNSON,** | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) No. 4:17-cv-00100 |
| | ) REEVES/STEGER |
| **NANCY A. BERRYHILL,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| *Defendant*. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is United States Magistrate Judge Steger's Report and Recommendation ("R&R") [D. 22], regarding the disposition of Kenneth Munson and the Commissioner's cross-motions for summary judgment. Judge Steger recommends that the Court deny Munson's motion [D. 18] and grant the Commissioner's [D. 20]. Munson filed an objection to certain parts of the R&R [D. 23], to which the Commissioner responded [D. 25]. The Court will review the contested parts of the R&R *de novo*. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

When reviewing an administrative law judge's decision that an individual is not disabled, the Court looks to whether the ALJ applied the correct legal standard and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). The substantial-evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Id.* (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Because this standard "presupposes that there is a zone of choice within which the decisions makers [*sic*] can go either way ... [a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Riley v. Apfel*, 162 F.3d 1162 (6th Cir. 1998) (quoting *Mullen v. Bowen*, 800 F.2d 535,

1

545 (6th Cir. 1986)) (internal quotation marks omitted). On review, this Court may not try the case anew or decide questions of credibility. *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 2018 WL 2017564, at *5 (6th Cir. Apr. 30, 2018).

In determining whether an individual is disabled, the ALJ applies the following five-step sequential analysis:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that ... meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors ... he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (discussing 20 C.F.R. § 404.1520). In order to address step four, the ALJ must first determine the claimant's residual functional capacity, which is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c).

In this case, the ALJ found that Munson has the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b),[1] with the following limitations:

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities...." 20 C.F.R. § 404.1567(b).

> [T]he claimant requires a sit or stand option at about 30-minute to 1-hour intervals and he can do no climbing of ladders, ropes, or scaffolds. The claimant can occasionally perform postural activities (balancing, stooping, kneeling, crouching, crawling), but he can do no overhead reaching with his right arm. There are no limitations on the hands for handling, fingering, and feeling. The claimant must avoid concentrated exposure to hazards (unprotected heights, moving machinery, etc.), and he is limited to simple, routine, repetitive tasks. The claimant must have only occasional contact with the public, co-workers, and supervisors, and work changes must be infrequent.

[D. 14, at 24].[2] Based on this residual functional capacity and considering Munson's age, education, and work experience, the ALJ determined that Munson was capable of performing work as a gluer or tester/inspector, and that such jobs existed in significant numbers in the national economy. The ALJ therefore concluded that Munson was not disabled and was not entitled to benefits.

Munson disputes the ALJ's determination of his residual functional capacity on several grounds. He first says that the ALJ improperly relied on the medical opinion of Dr. James Millis, who opined that Munson could lift or carry up to 20 pounds occasionally and up to 10 pounds frequently. The administrative opinion states that only partial weight was given to Dr. Millis's assessment. But Munson claims that this is not true, and that the ALJ actually gave this opinion *primary* weight because there is no other physician's opinion in the record stating that Munson can lift these particular weights at these frequencies. He says that without Dr. Millis's opinion, the ALJ would have no medical opinion on which to base his finding that Munson has the functional capacity for light work. This argument is without merit for three primary reasons.

First, Munson's assertion regarding the contents of the record is false. The ALJ may not have cited directly to it, but the record does in fact contain another physician's opinion stating that Munson could lift or carry up to 20 pounds occasionally and up to 10 pounds frequently; this

---

[2] Document 14 contains the complete certified administrative record in this case.

3

opinion was rendered by Dr. Calixto Aquino, a family medicine doctor, on April 26, 2013, and can be found in the document explaining the initial disability determination [D. 14, at 73-74].

Second, in assessing a claimant's residual functional capacity, an ALJ is to consider *all* of the relevant medical and other evidence, which extends beyond physician's opinions. 20 C.F.R. § 404.1545(a)(3). *Cf. Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-43 (6th Cir. 2017) (rejecting the argument that "the ALJ's [residual functional capacity finding] lacks substantial evidence because no physician opined that [the claimant] was capable of light work"). In addition to Dr. Millis's opinion as to this matter, the ALJ also considered numerous other physicians' medical opinions and records. The ALJ also assessed Munson's subjective complaints, which were determined to be only partially credible. For instance, according to physical therapy treatment records from July 31, 2014, Munson reported that his neck is doing "really good overall" and "his low back is fine," and that "he was able to pick up a grill and carry it up stairs." [D. 14, at 260]. A reasonable mind might accept these statements as relevant evidence adequate to support the conclusion that Munson could occasionally lift 20 pounds.

Third, it is clear that the ALJ did *not* take Dr. Millis's assessment at face value, and instead included certain limitations on Munson's ability to perform light work. For example, while Dr. Millis opined that Munson could perform a "full range" of light exertional activity, the ALJ limited the claimant to no overhead reaching with the right arm, based on the MRI scans [*Id.* at 25]. Additionally, whereas Dr. Millis said that Munson could sit, stand, or walk with normal breaks for about six hours, the ALJ gave him a sit or stand option at thirty-minute to one-hour intervals and limited him to no more than occasional postural activity [*Id.*]. The Court finds no reason to discredit the ALJ's assertion that he gave only "partial" weight to Dr. Millis's assessment. Accordingly, Munson's objection as to this issue is overruled.

Munson next contends that it was unreasonable for the ALJ to rely on Dr. Millis's opinion regarding his neck and low back issues because Dr. Millis is a gynecologist who never saw nor examined Munson in any capacity. It is true that the medical opinion of a specialist about issues related to her area of specialty is generally given more weight than the opinion of a source who is not a specialist. 20 C.F.R.§ 404.1527(c)(5). But Dr. Millis was not just a random gynecologist who elected to give his opinion in this matter. He was employed as the State agency's medical consultant, and, as such, he presumably had some level of expertise in evaluating disability claims. *See Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence."); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (noting that "State agent opinions merit significant consideration" because State consultants are "experts in the Social Security disability programs" (citing SSR 96-6p, 1996 WL 374180 (July 2, 1996))). The ALJ was entitled to rely on Dr. Millis's opinion, and to afford it partial weight in assessing Munson's residual functional capacity.

Munson also contends that the ALJ misstated Dr. Roopa Karri's assessment and that, read properly, Dr. Karri's opinion is inconsistent with a finding that Munson is capable of performing light work. Specifically, Munson submits that a man with a limp who has difficulty sitting and leaning to the left and is unable to squat or tandem gait—all of which Dr. Karri noted in his March 2013 assessment—is inconsistent with a light duty exertional residual functional capacity. On review, it is not for the Court to determine whether there was evidence in favor of Munson's position, but only whether there was substantial evidence to support the *ALJ's* opinion. In this case, there was substantial evidence in the record to support the ALJ's finding that Munson could handle the

physical requirements of light work. For example, progress notes from treating family nurse practitioner Karyn E. Jones, dated July 22, 2014 (more than a year after Dr. Karri's assessment), report "good muscular coordination and strength bilaterally," a "supple" neck, and no musculoskeletal abnormalities [D. 14, at 403]. The document also reports that Munson's "[g]ait is steady" and that he "makes position changes with ease." [*Id.*]. Even more recent progress notes from treating nurse practitioner Kristen McBay, N.P., dated April 15, 2015, report normal neck functioning and no abnormal curvatures or point tenderness of the lumbar spine [*Id.* at 28, 369-372]. McBay's notes also indicate that even though Munson suffers from chronic pain, the pain is stable and well-managed by medication.

In assessing Munson's residual functional capacity, the ALJ also reviewed treatment records, MRI scans, a third-party function report, and Munson's subjective complaints, among other medical and non-medical evidence and testimony. Considering the entirety of the record, the Court cannot say that the ALJ erred in determining that Munson could perform light work with certain exertional limitations. The fact that there is some evidence to support a different finding is not enough to reverse the ALJ's decision. *See Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017) (holding that the ALJ's finding of a "light work" residual functional capacity was supported by substantial evidence, despite some conflicting evidence in the record); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986) ("The fact that a record may also possess substantial evidence to support a different conclusion than that reached by the ALJ or that a reviewing judge might have decided the case differently is irrelevant.").

Finally, Munson says that the Magistrate Judge erred in his ruling when he stated that the ALJ had determined that Dr. Robert Hall, Jr. was not a "treating physician." This is correct; the ALJ repeatedly referenced Dr. Hall as Munson's treating physician and never expressly concluded

otherwise [*see* D. 14, at 26, 27, 29]. But the Magistrate's error regarding the ALJ's findings as to Dr. Hall's status is ultimately harmless; the Magistrate also held that even if Dr. Hall were deemed a "treating physician," the ALJ did not err in assigning Dr. Hall's opinion minimal weight because the opinion was inconsistent with subsequent records and the medical record as a whole. *See* 20 C.F.R. § 420.1527(c). Munson's final objection is overruled.

For the foregoing reasons, Munson's objections to the R&R [D. 23] are **OVERRULED**. After a careful review of the record, the Court agrees with the R&R and hereby **ADOPTS** it. For the reasons stated in the R&R, Munson's motion for summary judgment [D. 18] is **DENIED** and the Commissioner's motion for summary judgment [D. 20] is **GRANTED**. This case is hereby **DISMISSED with prejudice**.

**IT IS SO ORDERED**.

_____
**UNITED STATES DISTRICT JUDGE**